IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

VINCENT E. ZIRKER          )
                           )
                           )
        v.                 )          NO.  3:07-0378
                           )
METRO NASHVILLE POLICE     )
DEPARTMENT, et al.         )


TO:  Honorable Todd J. Campbell, Chief District Judge


# R E P O R T   A N D   R E C O M E N D A T I O N

By order entered February 4, 2008 (Docket Entry No. 13), this action was referred to the

Magistrate Judge to enter a scheduling order, to dispose or recommend disposition of any pretrial

motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary,

under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.  By Order

entered February 25, 2008 (Docket Entry No. 23), this action was reassigned to the undersigned

Magistrate Judge.

Presently pending before the Court are the motion for summary judgment of Defendant

Leopoldo Lopez (Docket Entry No. 100) and the motion for summary judgment of Defendants Jeff

Sanders and Wayne Fisher (Docket Entry No. 103).  The Plaintiff has filed responses in opposition

to both motions.  See Docket Entry Nos. 123-128.  Also before the Court are the Defendants' replies.

See Docket Entry Nos.  147 and 148.  Set out below is the Court's recommendation for disposition

of the motions.

# I. BACKGROUND

The Plaintiff is currently an inmate in the Federal Correctional Institution in Texarkana, Texas. On December 7, 2005, a federal jury in the Middle District of Tennessee found him guilty of one count of possession with intent to distribute cocaine and one count of conspiracy to distribute and possess with intent to distribute controlled substances, and he was subsequently sentenced to a total of 180 months imprisonment. See United States of America v. Vincent Zirker, No. 3:04-0074. The Plaintiff's convictions stem from evidence entered at trial showing that he and two other individuals, one of whom was a co-defendant, were involved in processing and distributing crack cocaine during the time period of April to July 2003.[1]

In addition to the two charges of which he was convicted, the Plaintiff had also been charged with one count of unlawful distribution and possession with intent to distribute cocaine (Count 5) and one count of being a felon in possession of a firearm (Count 6).[2] The Plaintiff was acquitted on both of these counts.

The two acquitted charges were based upon events occurring on the night of November 19, 2003, when a vehicle the Plaintiff was driving was observed stopped in an alley by Metropolitan Nashville Police Department officers Jeff Sanders and Leopoldo Lopez, who had pulled their police car into the alley. An individual, later identified as Michael Wallace, exited the passenger side of the vehicle and was observed throwing some type of object into a nearby yard while he was walking away from the car. Officer Lopez pursued and stopped Mr. Wallace, and Officer Sanders discovered that

---

[1] The plaintiff was arrested on the federal drug charges pursuant to a criminal complaint and warrant on April 20, 2004. He and the co-defendant were subsequently indicted on April 29, 2004.

[2] These two charges were added to the original charges through a superceding indictment issued on November 2, 2005.

2

the object he had thrown was a leather box containing bags of cocaine. The Plaintiff then consented to the search of the vehicle, which he stated he had borrowed, and Officer Sanders discovered what appeared to be crack cocaine in the driver's seat and located a firearm under the driver's seat. Several other police officers arrived on the scene as back-up support, and the Plaintiff was temporarily placed in the backseat of Officer Wayne Fishers's car. After the Plaintiff was removed from the car, Officer Fisher discovered a small bag of what appeared to be crack cocaine in the back seat of his car.

The Plaintiff was arrested on state charges of driving on a suspended license, possession of a controlled substance with intent to sell, and unlawful possession of a handgun by a convicted felon. See Motion for Summary Judgment, at Exhibit B (Docket Entry No. 103-2). The arrest report was completed by Officer Lopez and approved by Officer Sanders, and Officer Sanders swore out criminal complaints for the charges against the Plaintiff. Upon an appearance before a state judicial officer that night, the Plaintiff was released on bond. Although the exact disposition of the state charges is unclear, it does not appear that the State pursued those charges.

Because the Plaintiff had a prior felony conviction at the time of the November 19, 2003, arrest and because the arrest involved a firearm, an investigation was subsequently initiated by the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). On April 28, 2004, Wayne Kilday, an ATF agent, interviewed Officer Lopez about the arrest and memorialized both his interview and his investigation in a report, dated April 29, 2004. See Plaintiff's Appendix, at Exhibit A (Docket Entry No. 124-2). Officers Sanders, Fisher, and Lopez each testified at the Plaintiff's federal trial.

In March 2007, the Plaintiff filed the instant action pro se and in forma pauperis under 42 U.S.C. §§ 1983 and 1985. He alleges that officers Lopez and Fisher violated his Fourteenth Amendment Due Process rights by maliciously prosecuting him for offenses known by them to be

false, by falsely testifying against him during his federal criminal trial, and by conspiring to engage in these activities. In his complaint, he specifically contends that the defendants:

> . . . conspired, confederated, and acting in concert with each other and with others unknown to the plaintiff, did cause false and fictitious criminal charges to be lodged against the plaintiff. To carry out the objects of this conspiracy, defendants, and each of them, wrote reports that detailed false and fictitious drug amounts and that charged plaintiff with possession of a firearm that plaintiff did not possess. In furtherance of the conspiracy, the defendants, and each of them, presented false and fifitious (sic) testimony before the United States District Court for the Middle District of Tennessee, case number 3:04-CR-74, and introduced a firearm into evidence in that proceeding that plaintiff never possessed and that was not referenced in any reports or other documentation prepared at the time of the plaintiff's arrest by the defendants. The purpose for introducing said testimony, and in furtherance of the conspiracy, was to secure a federal conviction against the plaintiff for behavior that he did not engage in and was "not guilty" of.

See Complaint (Docket Entry No. 1), at 3, V, ¶ 10.

The complaint was initially dismissed as frivolous under 28 U.S.C. § 1915 after the Court found that Heck v. Humphrey, 512 U.S. 477 (1994), barred the Plaintiff's claims. See Order entered April 10, 2007 (Docket Entry No. 2). On January 30, 2008, the Sixth Circuit Court of Appeals vacated the Order dismissing the action after determining that it was not clear that the Plaintiff's claims would necessarily implicate the fact or duration of his confinement in light of his allegations that he had been acquitted of the criminal charges that form the basis of his complaint. See Docket Entry No. 11. After the action was remanded, process was issued to the three defendants named in the complaint, Lopoldo Lopez, Wayne Fisher, and the Metro Nashville Police Department ("MNPD"). Three additional defendants, MNPD Officers Jeff Sanders, Paul Smith, and f/n/u Melozini were subsequently added

as defendants in both their individual and official capacities.  See Order entered April 16, 2008 (Docket Entry No. 42).[3]

By Order entered May 6, 2008 (Docket Entry No. 51), the Court  granted the motion to dismiss filed by the MNPD and dismissed all claims against the MNPD.  The Court also dismissed all official capacity claims against Defendants Lopez and Fisher, dismissed all claims against Defendants Smith and Melozoni, and denied the Plaintiff's motion for summary judgment.  Id.  Each of the remaining three defendants answered the complaint, see Docket Entry Nos. 26, 47, and 55), and scheduling orders (Docket Entry Nos. 56 and 87) were entered setting out deadlines for pretrial activity.

## II. DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

In his motion for summary judgment, Defendant Lopez argues that there are no facts supporting the constitutional claims brought against him and that he is further entitled to qualified immunity for his actions.  He contends that, although he was one of the police officers involved in the events of November 19, 2003, he had limited interaction with the Plaintiff and that the undisputed facts show that his involvement in the events consisted primarily of chasing down the passenger who had fled on foot from the vehicle which the Plaintiff was driving and that he had no involvement in arresting the Plaintiff or in bringing any criminal charges against him.  Defendant Lopez admits that he turned over the firearm found in the vehicle to the MNPD property room and produced the firearm at the Plaintiff's federal trial but asserts that it is undisputed that he offered no testimonial evidence

---

[3] In the Order, the Court denied the plaintiff's request to add Nashville Mayor Karl Dean and MNPD Chief of Police Ronal Serpas as defendants.  Id.

Case 3:07-cv-00378   Document 150   Filed 04/14/09   Page 5 of 17 PageID #: 750

against the Plaintiff at trial concerning any criminal conduct and he merely testified that the firearm which had been turned into the property room was the one which he produced at trial. Defendant Lopez finally contends that, although he was interviewed by a federal agent concerning the events of November 19, 2003, the agent's testimony at the federal criminal trial was not based in any part on the interview with Defendant Lopez.

In their joint motion, Defendants Sanders and Fisher argue that they are entitled to qualified immunity from the Plaintiff's Section 1983 claims because there is no evidence that either one of them took any actions which violated the Plaintiff's constitutional rights and that they are also entitled to absolute immunity from any claim which is based upon testimony they provided as witnesses in the Plaintiff's federal criminal trial. They further contend that the Plaintiff cannot provide any evidence which supports a claim against them under Section 1985. Finally, Defendant Sanders argues that the official capacity claim brought against him warrants dismissal because the Plaintiff has not alleged, and cannot prove, that any policy, custom, or practice of the Metropolitan Government of Nashville and Davidson County caused the alleged constitutional deprivations.

### III. SUMMARY JUDGMENT STANDARD OF REVIEW

Rule 56(c) of the Federal Rule of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." In order to prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that judgment as a matter of law should be granted in the moving party's favor. Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979).

The Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985). The non-moving party, however, may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting his claims and establishing the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Chao v. Hall Holding Co., Inc., 338 F.3d 557, 566 (6th Cir. 2003); Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989).

Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. Id. at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed. 2d 569 (1968).

## IV. CONCLUSIONS

The Defendants each challenge the merits of the Plaintiff's claims directly, and also assert the affirmative defense of qualified immunity. In addition, Defendants Sanders and Fisher assert the affirmative defense of absolute immunity.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates a clearly established statutory or constitutional

7

right of which a reasonable person in the official's position would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Gardenhire v. Schubert, 205 F.3d 303, 310-11 (6th Cir. 2000). The purpose of the qualified immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular conduct, and the doctrine protects all but the plainly incompetent or those who knowingly violate the law. Dorsey v. Barber, 517 F.3d 389, 394 (6th Cir. 2008).

The qualified immunity analysis involves two inquiries. The first prong involves determining whether a constitutional violation has occurred. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Sigley v. City of Parma Heights, 437 F.3d 527, 537 (6th Cir. 2006); Jackson v. Leighton, 168 F.3d 903, 909 (6th Cir. 1999). If the Court finds that no violation has occurred, then the case must be dismissed. Saucier, 533 U.S. at 201. If the Court finds that the facts presented to the Court sufficiently show that a constitutional violation has occurred, the Court then determines whether the constitutional right was clearly established at the time of the incident in question such that a reasonable officer in the defendant's position would have known that his conduct violated that right.[4] See Saucier, 533 U.S. at 201; Champion v. Outlook Nashville, Inc., 380 F.3d 893, 900-01 (6th Cir. 2004); Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003); Burchett v. Kiefer, 310 F.3d 937, 942-43 (6th Cir. 2002); Risbridger v. Connelly, 275 F.3d 565, 569 (6th Cir. 2002).

In the instant action, the Court finds it appropriate to initially address the issue of whether the facts before the Court support a finding that the Plaintiff's constitutional rights have been violated.

---

[4] In Pearson v. Callahan, __ U.S. __, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), the United States Supreme Court clarified that rigid application of the two step qualified immunity analysis, which had been made mandatory in Saucier, was no longer the rule and that courts are not required to first determine whether a constitutional right has been violated before determining whether the right alleged to have been violated was clearly established.

8

At the outset, it is important to note that the Plaintiff very specifically alleges in his complaint that his claims for malicious prosecution and a conspiracy to maliciously prosecute him are brought under the Fourteenth Amendment's Due Process clause. See Complaint (Docket Entry No. 1), at 4 ¶¶ 16-18. In response to the Defendants' motions for summary judgment, the Plaintiff reiterates that his claims are based on the Due Process protections, both substantive and procedural, and that his claims are not based on the Fourth Amendment, as argued by the Defendants. See "Judicial Notice to Court" (Docket Entry No. 112).

The Plaintiff's legal position presents significant legal obstacles for his action. First, the United States Supreme Court has held that a claim for malicious prosecution cannot be maintained under the substantive due process component of the Fourteenth Amendment. See Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); Spurlock v. Satterfield, 167 F.3d 995, 1006 n.19 (6th Cir. 1999). Second, the Plaintiff has specifically disavowed reliance on the Fourth Amendment, see Docket Entry No. 112, and he does not allege a claim for false arrest under the Fourth Amendment. As such, the Plaintiff's only remaining claim is that he was deprived of his liberty in violation of his procedural due process rights under the Fourteenth Amendment.[5] However, the Plaintiff has not alleged that the criminal proceedings subsequent to his arrest were somehow deficient to the point that they deprived him of due process, let alone that the named defendants were responsible for any such deprivation.

However, even if the Court overlooked the shortcoming of the Plaintiff's reliance on the Fourteenth Amendment and assumed that his claims were brought under the proper constitutional

---

[5] In Wilson v. Morgan, 477 F.3d 326, 333 (6th Cir. 2007), and Radvansky v. City of Olmstead Falls, 395 F.3d 291, 313 (6th Cir. 2005), the Sixth Circuit cast doubt upon use of the Fourteenth Amendment Procedural Due Process clause as the underpinning of claims based upon allegations of wrongful arrest or wrongful imprisonment.

9

foundation, his claims warrant summary judgment in favor of the Defendants.  There are simply no genuine issues of material fact which require resolution at trial, and no reasonable jury could find in favor of the Plaintiff on his claims.

The Defendants are absolutely immune from liability for the Plaintiff's claims which are based upon testimony given at his federal criminal trial.  It is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings.  See Briscoe v. LaHue, 460 U.S. 325, 330-31, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); Spurlock, 167 F.3d at 1001.  Thus, the Defendants are insulated from liability for any testimony that they provided as witnesses at trial, and this immunity applies[6] regardless of the Plaintiff's allegations that the Defendants committed perjury.  Spurlock, supra.  Moreover, the mere fact that the Plaintiff alleges that a conspiracy existed to render false testimony, as opposed to simply alleging that one person testified falsely at his trial, does not waive the protection of absolute testimonial immunity.  See Spurlock, supra; Alioto v. City of Shively, Kentucky, 835 F.2d 1173, 1174-75 (6th Cir. 1987); Macko v. Byron, 760 F.2d 95, 97 (6th Cir. 1985).

To the extent that the Plaintiff intends to assert that he was falsely arrested on November 19, 2003, such a claim is clearly untimely.  A claim for false arrest accrues at the time of the arrest or no later than the first judicial proceeding subsequent to arrest.  See Wallace v. Kato, 549 U.S. 384, 391, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); Fox v. Desoto, 489 F.3d 227, 233 (6th Cir. 2007).  In light

---

[6] Unlike Defendants Sanders and Fisher, Defendant Lopez does not raise the defense of absolute testimonial immunity.  As set out infra, however, there are no facts which support a claim that Defendant Lopez took any acts supporting a claim of malicious prosecution even if he is not granted absolute immunity for his trial testimony.

10

of the one year statute of limitations which applies,[7] the Plaintiff had one year from his arrest to bring a false arrest claim and his action, filed in March 2007, is several years late.

The Court finds that the Plaintiff's malicious prosecution claim suffers from a lack of proof on essential elements required for such a claim. Although the Sixth Circuit Court of Appeals has yet to specifically define the elements required for a malicious prosecution claim, it is nonetheless clear that "such a claim fails when there was probable cause to prosecute, or when the defendant did not make, influence, or participate in the decision to prosecute." Fox, 489 F.3d at 237. See also McKinley v. City of Mansfield, 404 F.3d 418, 444-45 (6th Cir. 2005); Thacker v. City of Columbus, 328 F.3d 244, 259 (6th Cir. 2003); Darrah v. City of Oak Park, 255 F.3d 301, 312 (6th Cir. 2001).

The fact that the Plaintiff was ultimately indicted by the grand jury on the federal charges shows the existence of probable cause for the charges. "[T]he finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." Higgason v. Stephens, 288 F.3d 868, 877 (6th Cir. 2002) (quoting Ex parte United States, 287 U.S. 241, 250, 53 S.Ct. 129, 77 L.Ed. 283 (1932)). In light of the grand jury indictment, any malicious prosecution claim fails because the Plaintiff cannot show the absence of probable cause. See Barnes v. Wright, 449 F.3d 709, 716 (6th Cir. 2006) (probable cause negating malicious prosecution claim was established by grand jury indictment even in face of allegations that the defendants misled the grand jury).

Furthermore, the Court finds that there was probable cause for the Plaintiff to be arrested on November 19, 2003. Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to warrant a man of reasonable caution to believe that an offense had been,

_____

[7] See Tenn. Code Ann. § 28-3-104(a)(3); Wilson v. Garcia, 471 U.S. 261, 279-280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); Berndt v. Tennessee,796 F.2d 879, 883 (6th Cir. 1986).

11

was being, or was about to be committed.  See Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Fox, 489 F.3d at 236.  "A finding of probable cause does not require evidence that is completely convincing or even evidence that would be admissible at trial; all that is required is that the evidence be sufficient to lead a reasonable officer to conclude that the arrestee has committed or is committing a crime."  Harris v. Bornhorst, 513 F.3d 503, 511 (6th Cir.), cert. denied, __U.S.__, 128 S.Ct. 2938, 171 L.Ed.2d 865 (2008).

The existence of probable cause "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152-53, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).  The undisputed facts show that police officers observed a vehicle driven by the Plaintiff abruptly stop in an alley, observed a passenger exit the vehicle and quickly walk away when the officers approached, and observed the passenger throw an object into a yard which was later discovered to be a bag containing drugs.  Upon the Plaintiff's consent to search the vehicle, additional drugs and a firearm were discovered in the vehicle. Regardless of the Plaintiff's subsequent acquittal on the federal charges, his  explanations for these events, or any factual inconsistencies which may exist in the written reports generated concerning the arrest, specific facts existed on the night in question which made it reasonable for the police officers to believe that the Plaintiff had committed criminal offenses.

With respect to the decision to prosecute, there is no evidence that any of the Defendants, as metropolitan police officers, had any role in the decision of the United States Attorney's Office to prosecute the Plaintiff for the federal charges brought against him.  The Sixth Circuit has held that a police officer cannot be liable for a Fourth Amendment malicious prosecution claim when he did not make the decision to bring charges.  See McKinley, 404 F.3d at 444; Skousen v. Brighton High Sch., 305 F.3d 520, 529 (6th Cir. 2002).

12

However, a plaintiff may overcome a lack of proof on the probable cause and the decision to prosecute elements by showing that the defendant manufactured or tampered with evidence or in some other manner caused false evidence to be used to support or initiate a prosecution. See Peet v. City of Detroit , 502 F.3d 557, 566 (6th Cir. 2007); Hinchman v. Moore, 312 F.3d 198, 202-03 (6th Cir. 2002); Darrah, 255 F.3d at 311; Spurlock, 167 F.3d at 1001-03. The Plaintiff's claims may only succeed based upon this exception, and he alleges that the Defendants caused "false and fictitious evidence" to be used against him and caused him to be charged with crimes they knew to be false. After review of the entire record and the evidence before the Court, the Court concludes that the Plaintiff's allegations are wholly unsupported.

The Plaintiff's false evidence claim is based primarily on the fact that he was acquitted of the federal charges at issue and on his contention that Defendants Lopez and Sanders included "false" information in the arrest report concerning the firearm and the amount of drugs listed in the report. However, there are no facts supporting his claim that false evidence was manufactured by the Defendants and used against him at trial, at the grand jury proceedings which led to his indictment, or in any other manner.

The Plaintiff's ultimate acquittal of the federal charges does not, by itself, provide any proof that false evidence was used against him or that the evidence offered to prove his guilt is to be discredited as false. The Constitution simply does not guarantee that only the guilty will be arrested. See Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). If it did, a Section 1983 claim would arise for every defendant acquitted. Id.

The Plaintiff's argument that Defendants Sanders and Lopez acted "falsely" concerning the firearm appears to be solely based upon the fact that the serial number for the firearm which was listed on the forensic testing report and which was included in Agent Kilday's report is different from the

13

serial number for the firearm that was written in the arrest report. The Plaintiff also argues that the evidence at his criminal trial showed that forensic testing did not find his fingerprints on the firearm.

The Plaintiff's argument is utterly meritless. The evidence concerning the serial numbers listed for the firearm is as follows. The arrest report prepared by Defendant Lopez and approved by Defendant Sanders describes the firearm found in the vehicle as "Heritage RoughRider HR76128." See Plaintiff's Appendix, at Exhibit A (Docket Entry No. 124-1), at 2. The Ballistics Report prepared by Metro Firearms Examiner Mark L. Baker for the firearm describes the firearm as "Heritage revolver, model: Rough Rider, caliber .22LR, serial number: 33054, marked: MLB." Id. at Exhibit C (Docket Entry No. 124-4). The serial number "33054" was also listed for the firearm in the investigative report prepared by ATF Agent Kilday, who relied in part on the ballistics report in preparing his report. See Exhibit A1 (Docket Entry No. 124-2), at 2-3. At the Plaintiff's criminal trial, Mr. Baker testified that the firearm produced at trial was the firearm he examined and that the firearm had a serial number of "HR76128." See Exhibit B (Trial Transcript) (Docket Entry No. 124-3), at 60-69.

At best, this evidence merely shows negligence on the part of Mr. Baker in preparing his report. When asked at trial upon cross-examination about the difference in the serial numbers, Mr. Baker testified that it was an "accident" and he wrote the numbers down wrong. Id. at 67-68. The report prepared by Agent Kilday simply furthered the error regarding the serial number made by Mr. Baker. Defendants Sanders and Lopez had nothing to do with the error made in the reports of these two individuals. Indeed, the trial testimony from Mr. Baker was that the serial number of the firearm produced at trial was "HR76128," which is exactly what was included in the arrest report and is exactly what is listed as the serial number in the forensics fingerprint report for the firearm. See Exhibit E (Docket Entry No. 124-6). Under absolutely no reasonable interpretation can the facts relied

14

upon by the Plaintiff show that Defendants Lopez and Sanders created false evidence, prepared a false report, or otherwise manufactured evidence with respect to the firearm.

Furthermore, and more importantly, the Plaintiff has offered absolutely no evidence which even remotely suggests that a firearm was not discovered in the vehicle and that Defendants Sanders or Lopez planted a gun in the vehicle in order to support criminal charges against the Plaintiff. The Plaintiff has not provided affidavits or testimonial evidence from himself or from any other person which supports such a contention and has not provided evidence that there was not a gun in the vehicle at the time he was driving it.

The Plaintiff's argument regarding the weights of the drugs seized during the arrest is similarly lacking in merit. The arrest report includes a section in which the seized drugs are described by suspected type and estimated quantity. The report states that the quantity of suspected crack cocaine seized during the arrest is estimated to be 35 grams and the quantity of "cocaine (other)" is estimated to be 6.5 grams. See Plaintiff's Appendix, at Exhibit A (Docket Entry No. 124-1), at 2. The report also contains a section in which the seized drugs are attributed to each arrestee. The report attributes to the Plaintiff a "bag of white rocks" and estimates its value at "$100.00." Id. In his investigative report, Agent Kilday states that "approximately 35 grams of suspected crack cocaine" were found on the individual who had run from the vehicle and that the total weight of crack cocaine recovered from the Plaintiff was "6.5 grams." See Exhibit A1 (Docket Entry No. 124-2). At trial, John Scott, a forensic chemist with the Tennessee Bureau of Investigation, testified that he conducted tests on four exhibits provided to him from the arrest and determined that the first was cocaine base weighing 24.1 grams, the second was powder cocaine weighing 6.8 grams, the third was heroin powder weighing 1.7, and the fourth was cocaine base weighing .2 grams. See Exhibit G (trial transcript) (Docket Entry No. 124-3), at 29.

Seizing upon these inconsistencies, the Plaintiff argues that the Defendants detailed false and fictitious drug amounts in the arrest report. Once again, however, the Plaintiff's argument lacks any merit. The drug amounts listed in the arrest report are clearly listed as estimates of the quantities seized. Obviously, upon forensic testing, the estimated amounts may ultimately be shown to be inaccurate, which was the case in the instant action. There is simply no reasonable basis for concluding that false or fictitious evidence of the drug amounts was manufactured by the Defendants as alleged by the Plaintiff.

The Court has reviewed the Plaintiff's responses in opposition to summary judgment, as well as the entire record, and finds that the Plaintiff does not raise a single disputed issue of material fact which requires resolution by a jury. He has clearly combed the record in his criminal action with a fine tooth comb and has found minor inconsistencies in the record. However, bringing a claim under Section 1983 for malicious prosecution is not a vehicle for an acquitted defendant to revisit factual disputes or raise factual issues which may be gleaned from the record in a previous criminal action. The Plaintiff's claim is for malicious prosecution based on allegations that the Defendants manufactured false and fictitious evidence in their arrest reports and trial testimony. Unfortunately for the Plaintiff, the only reasonable reading of the evidence before the Court is that the Defendants did not commit the alleged acts and that the only thing manufactured in the instant case is the Plaintiff's claim that he was maliciously prosecuted.[8]

---

[8] Because the Court finds no evidence supporting the Plaintiff's underlying claim that he was maliciously prosecuted, his claim under 42 U.S.C. § 1985 of a conspiracy to maliciously prosecute him and claim against Defendant Sanders in his official capacity necessarily warrant dismissal since both claims rely upon a finding that the Plaintiff's constitutional rights were violated.

## RECOMMENDATION

Based on the foregoing, the Court respectfully RECOMMENDS that the motion for summary judgment of Defendant Leopoldo Lopez (Docket Entry No. 100) and the motion for summary judgment of Defendants Jeff Sanders and Wayne Fisher (Docket Entry No. 103) be GRANTED and that this action be DISMISSED WITH PREJUDICE.

The Court further RECOMMENDS that any appeal NOT be certified under 28 U.S.C. § 1915(a)(3) as taken in good faith.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of  this Report and Recommendation to which objection is made.  Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET  GRIFFIN
United States Magistrate Judge

17